# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 1:06-CR-0199-01** |
| | : | **1:06-CR-0199-10** |
| v. | : | **1:06-CR-0199-11** |
| | : | **1:06-CR-0199-24** |
| **JAMIE CARDENAS BORBON,** | : | |
| **ANTONIO AVILA, FERNANDO** | : | (Judge Conner) |
| **BELTRAN, and ROGELIO LOPEZ** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court are defendants' post-trial motions. Defendant Rogelio Lopez ("Lopez") moves for judgment of acquittal or, in the alternative, for a new trial, and defendants Jamie Cardenas-Borbon ("Cardenas-Borbon") and Fernando Beltran ("Beltran") join said motion. (Doc. 1234, 1235, 1237, 1242, 1248.) Defendant Antonio Avila ("Avila") requests a new trial, arrest of judgment,[1] or, in the alternative, judgment of acquittal, and Beltran joins his motion. (Doc. 1236, 1243, 1248.) For the reasons that follow, the motions will be denied.

---

[1] Rule 34 of the Federal Rules of Criminal Procedure provide for an arrest of judgment either if "the indictment or information does not charge an offense" or if "the court does not have jurisdiction of the charged offense." FED. R. CRIM. P. 34(a). Although Avila designated his motion, in part, as a "Motion for Arrest of Judgment," he seeks a judgment of acquittal in the body of his motion. (See Doc. 1236 at 3-4.) Avila does not present the type of claims subject to a motion for arrest of judgment, and therefore, the court will analyze his claim as a motion for judgment of acquittal.

I.  **Factual Background & Procedural History**

On September 17, 2008, an indictment[2] was filed charging Cardenas-Borbon, Avila, Beltran, and Lopez (collectively, "defendants") and other individuals with a variety of crimes.  In pertinent part, count 1 charged the defendants with conspiracy to distribute cocaine hydrochloride, crack cocaine, or marijuana, or conspiracy to possess with intent to distribute; count 2 charged them with distribution or possession with intent to distribute cocaine hydrochloride; count 3 alleged that Lopez distributed or possessed with the intent to distribute marijuana; and counts 5 and 8 charged Avila and Beltran with attempted escape and use of an interstate facility in aid of bribery.  (Doc. 828.)  The parties are familiar with the underlying factual record—which is voluminous—and therefore, the court will set forth only those facts which are relevant to the court's analysis of the pending motions.  See III. Discussion, *infra*.  In general, it is sufficient to note that the government presented evidence that defendants were involved in large scale drug trafficking, and that at various points in time, they supplied drugs to Amauris Sanchez ("Sanchez"), who ran a drug trafficking organization in central Pennsylvania.  The government's evidence also showed that Sanchez, Avila, and Beltran were subsequently incarcerated at the same facility and that they planned an escape which involved bribing members of the prison staff.

---

[2] The grand jury returned several indictments in this case.  The relevant indictment is the third superseding indictment.  (See Doc. 1282 at 1; Doc. 1418 at 1-3; see also Doc. 828.)

Trial began with jury selection on June 8, 2009, and the case was submitted to the jury roughly two weeks later, at approximately 6:00 p.m. on June 23, 2009. (Doc. 1282 at 1; Doc. 1418 at 4.) Counts 1, 2, 3, 5, and 8 were submitted to the jury. (Doc. 1214.) In their respective motions, defendants allege that a court security officer overheard a juror say "Let's hurry up and convict the defendants so that we can get out of here." (Doc. 1282 at 4.) After deliberating approximately two and a half hours, the jury found the defendants guilty on counts 1, 2, 5, and 8, but the jury acquitted Lopez of distribution or possession with intent to distribute marijuana. (Doc. 1214; Doc. 1282 at 1-2; Doc. 1418 at 4.) On June 30, 2009, defendant Lopez filed a motion for judgment of acquittal or, in the alternative, for a new trial, which defendants Cardenas-Borbon and Beltran subsequently joined. (Doc. 1234, 1235, 1237, 1242, 1248.) On the same date, defendant Avila filed post-trial motions, which defendant Beltran later joined. (Doc. 1236, 1243, 1248.) The defendants filed a joint brief in support of their post-trial motions, (Doc. 1282), and the government filed a brief in opposition (Doc. 1418). The motions are now ripe for disposition.

## II. Standard of Review

On a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court must "sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." United States v. Flores, 454 F.3d 149, 154 (3d Cir. 2006); see also United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) ("[A] district court must . . . 'determine whether any rational trier of fact could have found proof of guilt beyond

a reasonable doubt based on the available evidence.'" (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001))).

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). When reviewing a motion for a new trial based on a "weight of the evidence" argument, a district court may order a new trial only if the court "believes that 'there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" United States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003) (citation omitted).

## III. Discussion

Lopez moves under Rule 29(c) for the court to enter a judgment of acquittal with respect to counts 1 and 2; he contends that the evidence against him was insufficient to sustain a conviction. Cardenas-Borbon and Beltran join this motion. Avila, joined by Beltran, also makes a motion pursuant to Rule 29(c) requesting that the court enter a judgment of acquittal with respect to counts 5 and 8, and he claims that the evidence tending to prove his guilt was insufficient. In the post-trial motions that Avila originally filed, he made a variety of other arguments which the defendants' joint brief in support of the pending motion did not renew, but the court will address these arguments nevertheless. In addition, all defendants contend that the interests of justice require the court to grant a new trial pursuant to Rule 33(a). The court will address these issues *seriatim*.

4

### A. Lopez's Motion for Judgment of Acquittal on Counts 1 and 2

The jury found all defendants guilty on counts 1 and 2; thus, the jurors necessarily concluded that the government proved the elements of the crimes charged therein beyond a reasonable doubt. The court will first address count 2, which alleged that the defendants distributed certain narcotics, or possessed narcotics with the intent to distribute them, and then turn to count 1, which charged the defendants with a conspiracy to do the same.

Count 2 required the government to prove that the defendants were in either actual or constructive possession of powder cocaine, crack cocaine, or marijuana. See United States v. Introcaso, 506 F.3d 260, 270-71 (3d Cir. 2007). The Third Circuit has explained that, in order to show constructive possession, the government

> must submit sufficient evidence to support an inference that the individual "knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both 'dominion and control' over an object and knowledge of that object's existence."

Introcaso, 506 F.3d at 270 (quoting United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992) (citations omitted)). The government's evidence against Lopez suggested that he constructively possessed ten kilograms of cocaine recovered from Martin Lopez's vehicle, a green minivan. Lopez argues that the evidence is insufficient to sustain a conviction, even when viewed in the light most favorable to the government. (Doc. 1282 at 12-13.) The court disagrees. The evidence, viewed in

the light most favorable to the government, shows that Lopez engaged in a "car switch," a method by which drug dealers deliver large quantities of drugs, with Martin Lopez. (Doc. 1385 at 50-51.) When the police approached, defendant Lopez had the keys to Martin Lopez's minivan in his hand, and he was walking "hurriedly" toward the minivan. (Id. at 43, 46-47, 49.) After searching the cars, the police found more than ten kilograms of cocaine in the minivan. (Id. at 56-59, 61-62.) The evidence also showed that defendant Lopez had a history of involvement in drug trafficking, (Doc. 1388 at 88, 129-32), and that he had traveled to the area to obtain ten kilograms of cocaine, (id. at 183). Such evidence is clearly sufficient to support an inference that Lopez knowingly had "both the power and the intention . . . to exercise dominion or control" over the ten kilograms of cocaine in Martin Lopez's vehicle.[3] Therefore, the court will not disturb the jury's finding of guilt.

Count 1 alleged that defendants conspired to distribute or possess with intent to distribute cocaine or marijuana, and it required the government to show "a unity of purpose between the alleged conspirators, an intent to achieve a common goal,

---

[3] Lopez cites testimony that Martin Lopez gave his keys to a third individual at the scene, Luis Zuniga, rather than to defendant Lopez, and he argues that the evidence is therefore insufficient to support a finding that defendant Lopez possessed the cocaine. (Doc. 1282 at 12-13.) This argument is unavailing. The court must consider the evidence in the light most favorable to the government, and it should not "weigh the evidence or . . . determine the credibility of witnesses." United States v. Soto, 539 F.3d 191, 194 (3d Cir. 2008) (quoting United States v. Voight, 89 F.3d 1050, 1080 (3d Cir. 1996)). Under the constrained standard of review applicable to the pending motion, the existence of some evidence that refutes the government's evidence does not make a judgment of acquittal appropriate. In the case *sub judice*, there is sufficient evidence to support a finding of guilt beyond a reasonable doubt by a rational trier of fact; thus, the court must sustain the verdict.

and an agreement to work together toward that goal."[4] United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999); see also United States v. Idowu, 157 F.3d 265, 268 (3d Cir. 1998) (holding that the government must "put forth evidence tending to prove that defendant entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment"). The government may prove that a single conspiracy existed by "establish[ing] the existence of a continuing core conspiracy which attracts different members at different times and which involves different sub-groups committing acts in furtherance of the overall plan." United States v. Boyd, 595 F.2d 120, 123 (3d Cir. 1978). In the instant case, the government's evidence showed that the defendants participated in an overall plan to supply drugs to Sanchez's drug trafficking organization.[5]

Lopez contends that the government's evidence is insufficient to connect the drug transaction in which he was involved with the larger conspiracy. According to Lopez, the evidence links him only to Martin Lopez, not to Sanchez or to the conspiracy involving his codefendants. (Doc. 1282 at 14.) Lopez argues that the

---

[4] The government may make this showing entirely through circumstantial evidence. Gibbs, 190 F.3d at 198.

[5] The government's evidence indicated that the same individual introduced both Cardenas-Borbon and Lopez to Sanchez for the purpose of supplying drugs to Sanchez, (Doc. 1388 at 86-87), and that both of them supplied drugs to Sanchez directly, (Doc. 1388 at 89-93, 95-96, 127, 129-32, 135). The government also showed that Lopez introduced Beltran to Sanchez, (Doc. 1388 at 88-89, 138), and they jointly supplied Sanchez with drugs and jointly received payment from him, (Doc. 1388 at 138-140, 143-47). The evidence linked Avila to Sanchez through Beltran, who conducted drug transactions on behalf of Avila. (See Doc. 1384 at 29; Doc. 1385 at 164-65, 167, 176-77.)

7

recorded conversations presented at trial indicate that Lopez and Sanchez could not agree to a deal, and he asserts that "[t]he other testimony of Mr. Sanchez was unbelievable as shown by the fact that the jury acquitted Rogelio Lopez on the marijuana charges despite Mr. Sanchez's testimony." (Id.) The court cannot accept Lopez's argument. At this juncture, it is not the court's role "to weigh the evidence or to determine the credibility of witnesses." Soto, 539 F.3d at 194. When viewed in the light most favorable to the government, the evidence showed that Lopez had sold drugs to Sanchez on numerous prior occasions, (Doc. 1388 at 88, 129-32, 135, 143, 188), and that he had agreed to purchase cocaine for Sanchez, (id. at 180-81, 183-84). There is also evidence linking Lopez to Beltran and other individuals involved in the larger conspiracy. (Id. at 138-40, 143-46, 148-55, 160-61.) Therefore, there is sufficient evidence to link Lopez to the larger conspiracy, and the court will deny defendant's request for judgment of acquittal.

### B. Avila's Motion for Judgment of Acquittal on Counts 5 and 8

Count 5—which alleged that Avila and Beltran attempted escape—required the government to prove that Avila and Beltran intended to commit the offense of escape[6] and performed acts constituting a substantial step towards committing an

---

[6] The government articulated the elements of the offense of escape as follows: "(1) an escape (2) from an institution where the prisoner is confined under the direction of the Attorney General (3) pursuant to process under the laws of the United States by a court." (Doc. 1418 at 40). In United States v. Bailey, the Supreme Court defined "escape" as "absenting oneself from custody without permission." 444 U.S. 394, 407 (1980). The parties stipulated that Avila and Beltran were, at the relevant time, confined in prison, in the custody of the Attorney General, for felony drug offenses related to the instant case. (Doc. 1392 at 151-52.)

8

escape. See United States v. Hsu, 155 F.3d 189, 202-03 (3d Cir. 1989). Avila and Beltran argue that the government's evidence suggesting that they attempted to escape or to use interstate facilities in aid of bribery is insufficient to sustain a conviction, because "the plans and details of the fictitious escape plan came from the Government and [its] agents . . . ." (Doc. 1282 at 15.) The court is not persuaded. The government presented evidence that Beltran initially formulated and proposed the plan to escape from prison, and that he discussed escape plans with Sanchez, who was then his cellmate, and with Avila. (Doc. 1388 at 166-69.) Sanchez testified that Beltran's initial method for escaping was to "break through the cinder block." (Id. at 167.) Sanchez, who was then cooperating with law enforcement and acting at their direction, proposed an alternate escape plan: they would bribe a prison counselor, Karen Brown, who would obtain permission for Sanchez, Beltran, and Avila to be transported to a doctor. The plan also entailed the bribery of the corrections officers in charge of their medical transport. (Id. at 167-68.) Beltran and Avila pursued Sanchez's plan. (Id. at 168-74.) When viewed in the light most favorable to the government, the evidence shows that Beltran and Avila intended to escape. That they solicited and obtained money to be used in furtherance of the escape plan clearly evidences a substantial step towards completion of the crime and corroborates their intent to commit the escape. Therefore, the government's evidence suffices to sustain the jury's verdict.

With respect to count 8, it was the government's burden to prove the following: "(1) . . . use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of the unlawful activity." United States v. Zolicoffer, 869 F.2d 771, 774 (3d Cir. 1989) (quoting United States v. Wander, 601 F.2d 1251, 1258 (3d Cir. 1979)). The definition of an unlawful act includes, *inter alia*, bribery in violation of the laws of the state in which it is committed—in the instant case, the laws of Pennsylvania. 18 U.S.C. § 1952(b)(2). It is of no import that the officials to be bribed in the instant case were fictitious and therefore incapable of accepting the bribe.[7] The crime of bribery does not require a bilateral agreement. It is sufficient that the defendant "*believes* that he is conferring a benefit in exchange for official action," because "[e]ach defendant should be judged by what he thought he was doing and what he meant to do, not by how his actions were received by the other party." Commonwealth v. Schauffler, 580 A.2d 314, 317-18 (Pa. Super. Ct. 1990) (quoting MODEL PENAL CODE § 240.1

---

[7] Under the Pennsylvania crimes code, an individual commits the offense of bribery if "he offers, confers or agrees to confer upon another . . . (1) any pecuniary benefit as consideration for the . . . exercise of discretion as a public servant . . . or (3) any benefit as a consideration for a violation of a known legal duty as a public servant . . . ." 18 PA. CONS. STAT. § 4701(a). The phrase "public servant" encompasses all employees of the government; therefore, it includes prison counselors and corrections officers. 18 PA. CONS. STAT. § 4501. Moreover, the fact that "a person whom the actor sought to influence was not qualified to act in the desired way" is no defense to prosecution for bribery. 18 PA. CONS. STAT. § 4701(b).

10

comment) (emphasis in the original).[8] The evidence, viewed most favorably to the government, shows that Avila and Beltran arranged for a transfer of money through the United States mail, an interstate facility, and that they intended to use the money to bribe fictitious government employees to assist them in escaping from prison. (Doc. 1388 at 168-74.) The government's evidence also demonstrates that Avila and Beltran engaged in overt acts in furtherance of the unlawful activity—most notably, they solicited and received money to use in furtherance of their plan. (Id. at 170-74.) In light of this evidence, a rational trier of fact could have found defendants guilty on count 8, and the court will not disturb the verdict on count 8.

### C. Avila's Other Motions

Avila made a variety of arguments in the post-trial motions he originally filed. Although he did not re-raise most of them in defendants' joint brief in support of the pending motion,[9] the court will address Avila's other contentions. First, Avila argues that he established an entrapment defense. Second, Avila contends that the government failed to connect the conspiracy in which he was involved to the larger conspiracy involving his co-defendants. Third, Avila alleges that the government

---

[8] The Schauffler court cited a comment to § 240.1 of the Model Penal Code, noting that 18 PA. CONS. STAT. § 4701 was derived from § 240.1. Schauffler, 580 A.2d at 317.

[9] Defendants' joint brief includes a section on Avila's motion for judgment of acquittal on counts 5 and 8, discussed *supra* Part III.B. None of Avila's other arguments were renewed therein.

did not present sufficient proof that he possessed and distributed more than five kilograms of powder cocaine. Finally, Avila argues that the trial court erred in denying his pre-trial motion to sever. The court rejects each of Avila's arguments, for the reasons that follow.

The court does not agree with Avila's contention that he established the defense of entrapment, as an absolute defense to Counts 5 and 8, as matter of law. Entrapment is "a relatively limited defense that may defeat a prosecution only when the Government's deception actually implants the criminal design in the mind of the defendant." United States v. Lakhani, 480 F.3d 171, 179 (3d Cir. 2007) (quotations omitted). Avila argues that Sanchez and Brown, the prison counselor who was involved in the fictitious escape plan, overbore Avila's will and induced him to join the escape plan by praying on his sympathies and taking advantage of his post-surgery medical condition. (Doc. 1278 at 4). The record, however, does not support Avila's assertion. (See, e.g., Doc. 1388 at 169.) Avila correctly observes that Sanchez and Brown provided details for the escape plan, (see Doc. 1390 at 95-122), but this fact does not suffice to establish the entrapment defense. See United States v. Russell, 411 U.S. 423, 436 (1973). The government disproved the defense of entrapment beyond a reasonable doubt by establishing that, prior to any government involvement, Avila had already agreed to engage in an escape plan, and that Avila exhibited willingness to commit the crime of escape by his ready

response to the inducement.[10] See Lakhani, 480 F.3d at 179 (holding that the government may disprove an entrapment defense, *inter alia*, by showing "an already formed design on the part of the accused to commit the crime for which he is charged" or "a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement").

The court also rejects Avila's argument that the government failed to prove a connection between the conspiracy in which he was involved and the larger conspiracy, for the reasons stated *supra* Part III.A and *supra* note 5. The court notes that Sanchez dealt directly with Beltran, who conducted drug transactions on behalf of Avila, (see Doc. 1384 at 29; Doc. 1385 at 164-65, 167, 176-77); Sanchez did not deal directly with Avila. However, participants in sub-schemes to a larger conspiracy can become part of the larger conspiracy by aiding and abetting it. See United States v. Salerno, 485 F.2d 260, 262-63 (3d Cir. 1973) (citing Direct Sales Co. v. United States, 319 U.S. 703, 709 (1943)); see also Boyd, 595 F.2d at 123. When viewed in the light most favorable to the government, the evidence suffices to support a finding that Avila was connected to the larger conspiracy to supply drugs to Sanchez's organization. Therefore, the court cannot find that the government failed to prove such a connection.

---

[10] Avila correctly observes that there is some evidence in the record that refutes the government's evidence that Avila readily joined the escape plan. As explained *supra* note 3, however, it is not the court's role to weigh the evidence at this juncture; it must view the evidence in the light most favorable to the government. Flores, 454 F.3d at 154; Soto, 539 F.3d at 194.

Avila has also failed to persuade the court that the government's evidence was insufficient to prove that he possessed and distributed a quantity of cocaine exceeding five kilograms. He contends that, although the government's evidence showed his involvement in an April 22, 2006 transaction involving 4.86 kilograms of cocaine, "the Government failed to present any evidence at trial as to drug weights or quantities of cocaine in any other drug transactions" in which he was allegedly involved. (Doc. 1236 at 2, 4.) The government does not dispute that its evidence of other transactions involving Avila did not include evidence of the precise weight or quantity of drugs involved. Nevertheless, the government argues that a reasonable juror could accept its evidence as sufficient to establish beyond a reasonable doubt that Avila was involved in trafficking more than five kilograms of cocaine, and the court agrees. Government witness Adalberto Romero testified that he had conducted multiple drug transactions with Avila, each involving one or more kilograms of cocaine. (Doc. 1385 at 148-49, 151, 153-56.) Such evidence is sufficient to support the jury's determination that Avila was involved in trafficking five kilograms or more of cocaine. See United States v. Florez, 447 F.3d 145, 155 (2d Cir. 2006) ("The law is well established that a federal conviction may be supported 'by the uncorroborated testimony' of even a single accomplice witness 'if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt.'" (quoting United States v. Parker, 903 F.2d 91, 97 (2d Cir. 1900))); United States v. Trogdon, 575 F.3d 762, 767 (8th Cir. 2009) (holding that, even though

witnesses gave imprecise and inconsistent testimony regarding drug quantity, the evidence was sufficient to support the jury's drug quantity determination).

The court finds no error regarding its denial of Avila's motion to sever. Avila argues that he was prejudiced by the government's evidence relating to "alleged illegal drug activities by Defendants Beltran, Cardenas-Borbon and Lopez, which had absolutely no connection to or involvement by Defendant Avila." (Doc. 1236 at 1.) However, Avila's motion sought severance of the drug-related offenses from the escape-related charges.[11] (See Docs. 951, 953.) Avila did not argue that the court should separate the charges against him from those against his co-defendants; therefore, he cannot now persuade the court that failing to grant such a severance was error. By failing to raise this argument in his motion to sever, Avila certainly failed to met his "heavy burden" of showing that "the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." See Lore, 430 F.3d at 205. Therefore, the court concludes that it properly denied Avila's motion to sever.

---

[11] If the court construes Avila's post-trial motion as a challenge to the court's denial of his request to sever counts 1-4 from counts 5-8, the court nevertheless finds no error. The court notes that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993) (citation omitted). Avila's vague allegations of prejudice do not show "clear and substantial prejudice resulting in a manifestly unfair trial," nor do they show that the court abused its discretion. See United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005).

### D. Defendants' Motion for a New Trial

In support of their motion for a new trial, defendants emphasize the complexity of the evidence in the instant case[12] and the brevity of the jury's deliberations, and they allege that either a court security officer or an interpreter who provided translation services at the trial overheard an improper comment in a conversation between jurors. This conversation purportedly occurred a short time prior to deliberations, and defendants allege that one juror said "Let's hurry up and convict the defendants so that we can get out of here," or words to that effect. (Doc. 1282 at 4; Doc. 1234 ¶ 6.) As defendants acknowledge, the brevity of jury deliberations, without more, is insufficient grounds to grant a new trial. See Paoletto v. Beech Aircraft Corporation, 464 F.2d 976, 983 (3d Cir. 1972); see also United States v. Skelton, 893 F.2d 40, 45 (3d Cir. 1990). Defendants argue, however, that, in conjunction with an improper statement, the brevity of the jury's deliberations does suggest capriciousness. The court disagrees.

Defendants' bare assertion that a juror made an improper comment is plainly insufficient to warrant overturning the verdict, particularly without any other

---

[12] Trial testimony lasted eleven days, during which time the government called approximately twelve witnesses. The government introduced more than 100 exhibits in support of its case-in-chief, and defendants introduced approximately 40 exhibits during cross-examination of the government's witnesses. (See Doc. 1282 at 3.) Additionally, in their original post-trial motions, defendants observe that, on the second or third day of trial, the jurors informed the deputy clerk that they were confused as to the identities of the defendants. (Doc. 1236 ¶ 1; Doc. 1234 ¶ 7.) Defendants' joint brief in support of the pending motion does not re-raise this point. The court will not presume that the jurors' initial confusion continued throughout the trial and deliberations.

16

evidence of juror prejudice or bias, and in the absence of any evidence corroborating that the statement was, in fact, made. An allegation that an unidentified individual overheard an unidentified juror make a comment to another unidentified juror is far from reliable. Moreover, defendants are uncertain of the exact content of the alleged comment. Even if the court assumes, *arguendo*, that a juror did say something along the lines of the statement as alleged, the impropriety of such a comment is not so manifest that it would necessarily merit a new trial. For instance, it is equally plausible the juror's words were "Let's hurry up and finish so that we can get out of here." In context, the statement may have been simply a verbalization of the juror's frustration with the length of the trial.

Defendants also contend that an error was committed in that, despite the lateness of the hour, the jury was not instructed that they would return the following morning to continue their deliberations. (Doc. 1282 at 11.) Defendants admit that they failed to request such an instruction. (Id.) The court does not agree that this alleged error warrants a new trial. There is absolutely no basis to presume that failing to so instruct the jury had any impact upon their verdict.

Given the court's finding that there is substantial evidence to uphold the jury's guilty verdict,[13] the court concludes that the "interest of justice" does not require a new trial and that there is not a "serious danger . . . that an innocent

---

[13] The court notes that the jury members acquitted Lopez of distribution and possession with intent to distribute marijuana. This further supports the court's conclusion that the jury appropriately considered the evidence and the arguments presented.

person has been convicted." Brennan, 326 F.3d at 189.  Accordingly, the court will deny defendant's request for a new trial under Rule 33(a) of the Federal Rules of Criminal Procedure.

An appropriate order will issue.


                                                                S/ Christopher C. Conner
                                                                CHRISTOPHER C. CONNER
                                                                United States District Judge


Dated:        November 23, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 1:06-CR-0199-01** |
| | : | **1:06-CR-0199-10** |
| v. | : | **1:06-CR-0199-11** |
| | : | **1:06-CR-0199-24** |
| **JAMIE CARDENAS BORBON,** | : | |
| **ANTONIO AVILA, FERNANDO** | : | **(Judge Conner)** |
| **BELTRAN, and ROGELIO LOPEZ** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 23rd day of November, 2009, upon consideration of defendants' motions for a new trial, for arrest of judgment, or for judgment of acquittal (Doc. 1234, 1236), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motions (Doc. 1234, 1236) are DENIED.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge