IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO 1:06-CR-0199 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **JAIME CARDENAS-BORBON** | : | |

## MEMORANDUM

Presently before the court is defendant's *pro se* motion (Doc. 1790) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.[1] Defendant Jaime Cardenas-Borbon ("Borbon") asserts three claims of ineffective assistance of counsel based on: (1) counsel's failure to argue that Borbon's arrest was not supported by probable cause; (2) counsel's failure to move to suppress evidence seized from a hotel room; and (3) counsel's failure to object to the composition of the jury venire. Borbon also asserts that his sentence is unconstitutional pursuant to the Supreme Court's decision in <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). Also before the court is Borbon's motion (Doc. 1784) for jury panel information. For the reasons that follow, Borbon's § 2255 motion (Doc. 1790) and motion (Doc. 1784) for jury panel information will be denied.

---

[1] <u>See</u> 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

I.  **Factual Background**[2]

Prior to Memorial Day weekend, 2006, Mario Camacho ("Camacho"), advised Drug Enforcement Administration ("DEA") agents that during the weekend, he and another individual would be traveling to Lancaster with a large quantity of cocaine. (Doc. 1386 at 175-77; Doc. 1387 at 40-41). Throughout that weekend, Camacho maintained surreptitious communications with DEA agents via cell phone. (Doc. 1386 at 180).

On Thursday May 25, 2006, Camacho and Gabriel Rivera-Gil ("Rivera-Gil") met with Borbon in Emporia, Virginia. (Doc. 1387 at 60-65). Borbon had traveled from Tucson, Arizona with Monica Loreto ("Loreto") and her child. (Doc. 1386 at 200-205, 213-214; Doc. 1392 at 45-47, 74-79). Borbon instructed Rivera-Gil and Camacho to remove 50 kilograms of cocaine from a tractor trailer at a truck stop and place them in Camacho's vehicle. (Doc. 1387 at 62-64).

On Friday May 26, 2006, Camacho and Rivera-Gil traveled from Emporia to the Westfield Inn in Lancaster, Pennsylvania. (Id. at 66-69, 78; Doc. 1392 at 24-26). Camacho secretly met with DEA agents in Lancaster that evening. (Doc. 1390 at 225-36). Borbon and Loreto traveled separately from Emporia to the Days Inn in Lancaster. (Doc. 1392 at 27-28; Doc. 1386 at 246). They stayed in Room 147, which was registered to Loreto. (Doc. 1392 at 28; Doc. 1386 at 187).

---

[2] This section is based on the testimonial and documentary evidence introduced at Borbon's trial, held on June 8 to June 23, 2009. It only includes those facts relevant to the court's analysis of the instant motion.

2

On Saturday, May 27, 2006, Camacho and Rivera-Gil learned there were no rooms available at the Westfield Inn that evening. (Doc. 1387 at 70-71). Borbon arrived at the Westfield Inn and instructed Camacho and Rivera-Gil to register as guests at the Day's Inn. (Doc. 1387 at 71-72; Doc. 1392 at 26-27). In the parking lot of the Westfield Inn, law enforcement officers observed Rivera-Gil place a large and heavy duffel bag inside a white mini-van and immediately thereafter get into a SUV driven by Borbon. (Doc. 1386 at 183-86). Borbon and Rivera-Gil remained parked inside the SUV for approximately ten minutes before Rivera-Gil got back into the white mini-van with Camacho. (Id.) Camacho and Rivera-Gil then drove the mini-van to the Day's Inn. (Id.) Borbon also drove to the Day's Inn in a separate vehicle at the same time. (Id.). Law enforcement officers then observed Rivera-Gil move two large heavy duffle bags from the mini-van into Room 163, which was rented by Camacho. (Id. at 189-92; Doc. 1387 at 25). Throughout the day, Borbon visited Room 163 frequently. (Id. at 188-194; Doc. 1387 at 73-74, 80-82). Law enforcement officers also observed Borbon frequenting Room 147. (Doc. 1386 at 187-88).

That evening, law enforcement officers obtained a search warrant for Room 163, which they executed at approximately 9:45 p.m. (Id. at 196-197). In the closet, they found the two large duffle bags, which contained 39.95 kilograms of cocaine. (Id. at 197-99, 217-18). During this time period, Loreto and Borbon had returned to

the Day's Inn in Borbon's vehicle.  (Id. at 206-207).  Borbon was arrested.[3]  Loreto provided the officers with consent to search Room 147 and stated that Borbon occupied the room with her.  (Id. at 207).  During the resulting search, they seized a shoe box with approximately $182,000, as well as paraphernalia used to package large quantities of drugs and drug proceeds.  (Id. at 207-08, 215; Doc. 1391 at 230-31).

## II. Procedural History

On May 31, 2006, Borbon and Rivera-Gil were charged in a three-count indictment with drug offenses. (Doc. 11).  A superseding and second superseding indictment followed.  On September 17, 2008, the grand jury issued an eight-count third superseding indictment charging Borbon with (1) conspiracy to distribute and possess with the intent to distribute cocaine, crack cocaine, and marijuana, in violation of 21 U.S.C. § 846; and (2) distribution of and possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).  (Doc. 828).

Daniel M. Myshin, Esquire ("trial counsel") was appointed to represent Borbon on June 8, 2006.  (Doc. 24).  The defendant hired private counsel for some time, but on February 25, 2009, trial counsel was reappointed and remained counsel through Borbon's direct appeal.  (Doc. 991).

---

[3] The government appears to assert that Borbon was not arrested until after the search of Room 147.  (See Doc. 1817 at 15).  However, the court's review of the trial record indicates that Borbon was arrested shortly after arriving at the Day's Inn and prior to the search of Room 147.  (See, e.g., Doc. 1387 at 207 (". . . and as soon as he parked myself and other officers arrested [Borbon] out of that vehicle.") (testimony of Special Agent Mark O'Donnell).

From June 8 to June 23, 2009, Borbon and his co-defendants Rogelio Lopez, Fernando Beltran, and Antonio Avila were tried before a jury. (Doc. 1171). At trial, Amauris Sanchez ("Sanchez"), a leader in the conspiracy, and Camacho testified against Borbon. The jury convicted Borbon of (1) conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride, crack cocaine, and marijuana; and (2) distribution of and possession with the intent to distribute cocaine. (Doc. 1214). The jury found that the quantity of cocaine involved was five kilograms or more. (Id.) The court eventually sentenced Borbon to 292 months imprisonment. (Doc. 1623).

Borbon filed a notice of appeal with the Third Circuit on March 19, 2010. (Doc. 1631). The Third Circuit affirmed Borbon's conviction and sentence on August 10, 2011. United States v. Borbon, 454 F. App'x 42 (3d Cir. 2001); (Docs. 1745, 1750). The Supreme Court denied certiorari on February 21, 2012. See Borbon v. United States, 132 S. Ct. 1612 (2012).

On August 7, 2012, Borbon filed the instant motion for release of jury panel information. (Doc. 1784). On January 22, 2013, Borbon filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1790). The motions are fully briefed and ripe for disposition.

### III. Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. In general, relief under § 2255 is afforded based on one of four grounds: (1) the sentence was imposed in violation of the Constitution or other federal laws; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. R. GOVERNING § 2255 CASES 1(a). A district court is not required to hold a hearing when the record conclusively shows that a movant is not entitled to relief. United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008); see also United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) ("Vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.").

A defendant may not use a § 2255 motion to relitigate questions previously raised and considered on direct appeal. See United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition."). Similarly, if a defendant seeks collateral relief based on alleged trial errors to which no objection was made, or based on appellate errors not preserved on direct appeal, a defendant must demonstrate both (1) "cause" excusing his procedural default and (2) "actual prejudice" resulting from the errors or his "actual innocence." United States v. Frady, 456 U.S. 152, 167-68 (1982). A defendant may show "cause" for his procedural default by demonstrating

ineffective assistance of counsel. United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial. See id. at 687-88. Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different. See

Strickland, 466 U.S. at 694. The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. Id. at 697.

## IV.  Discussion

Borbon makes four claims in his § 2255 motion: (1) trial counsel was ineffective for failing to assert that Borbon's arrest was not based upon probable cause; (2) trial counsel was ineffective for failing to assert that Loreto's consent for the search of the hotel room was involuntary and therefore invalid; (3) trial counsel was ineffective for failing to make a Sixth Amendment objection to the composition of the jury venire; (4) Borbon's sentence is unconstitutional in light of Alleyne v. United States, 133 S. Ct. 2151 (2013). The court will address each issue in turn.

### A.  Probable Cause for Arrest

Borbon first alleges that his counsel was ineffective for failing to assert that his arrest was not based upon probable cause. A warrantless arrest is reasonable under the Fourth Amendment if the officer possesses probable cause to believe that the person committed or is committing a criminal offense. Davenpeck v. Alford, 543 U.S. 146, 152 (2004). An assessment of probable cause requires an officer to make a reasonable conclusion based on the facts known to the officer at the time of the arrest. Id.

Borbon cannot establish either prong under Strickland because the claim that the officers did not possess probable cause for his arrest is clearly meritless. See United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no

Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Borbon asserts that his arrest was supported merely by law enforcement officers' observations of his meetings with Rivera-Gil during Memorial Day weekend, 2006, and their knowledge that he visited Room #163 frequently that weekend. (Doc. 1790 at 12-14). However, Borbon ignores the fact that Camacho was continually feeding the agents information about the transaction throughout the weekend. That information, coupled with the large quantity of cocaine found in a hotel room frequented by defendant and law enforcement's independent observations of Camacho's, Rivera-Gil's, and Borbon's collective activity, provided sufficient probable cause to arrest Borbon.

Further, Borbon does not attempt to demonstrate how the outcome of the proceeding would have been different had trial counsel raised the issue and the court found that the officers did not possess probable cause for his arrest. It is well established that an illegal arrest alone does not invalidate a subsequent conviction. Gerstein v. Pugh, 420 U.S. 103, 119 (1975) (citing Frisbie v. Collins, 342 U.S. 519 (1952) and Ker v. Illinois, 119 U.S. 436 (1886)). Moreover, Borbon fails to identify any evidence that law enforcement would not have recovered but for Borbon's arrest or how the suppression of that evidence would have resulted in his acquittal.[4]

---

[4] Borbon alleges that law enforcement officers arrested him, took him into Room #147, and then conducted a search of Room #147 incident to his arrest. (Doc. 1790 at 9, 16). The record does not support this assertion. Instead, as discussed *infra*, the officers searched Room #147 after obtaining consent from Loreto.

Borbon's claim fails to satisfy either element under Strickland and must be dismissed.

    B.    Suppression Motion

Borbon alleges that his counsel should have moved to suppress the fruits of the Room 147 search because Loreto's consent was involuntarily provided. Borbon again fails to establish that trial counsel's performance was deficient. Indeed, trial counsel raised this issue in a brief filed with the Third Circuit on direct appeal pursuant to Anders v. California, 386 U.S. 738 (1967).[5] Trial counsel specifically stated that "counsel has no reason to believe that appellant can offer evidence in support of a good-faith challenge to the voluntariness of the companion's consent." (Case 10-1557, Doc. 003110127927 at 24). Following an independent review, the Third Circuit rejected this issue as "patently without merit." United States v. Borbon, 454 F. App'x 42, 44 (3d Cir. 2011). The Third Circuit reasoned that "[t]he Fourth Amendment challenge would necessarily fail based on the uncontested consent of Borbon's female companion." Id. Outside of Borbon's bald allegations, there is no evidence in the record that Loreto's consent was involuntarily provided. Borbon also fails to assert that he would have been acquitted but for the introduction of evidence – the money and the drug packaging paraphernalia – obtained through the search. In light of Sanchez's and Camacho's extensive trial testimony concerning Borbon's involvement in drug trafficking, a different result

---

[5] The Anders brief acknowledges that this issue was not preserved at the trial level. (Case 10-1557, Doc. 003110127927 at 24).

would have been extremely unlikely even if the fruits of the Room 147 search had been suppressed. Thus, Borbon's ineffective assistance of counsel claim on this ground is meritless.

C. Fair Cross Section

Borbon also alleges that his counsel was ineffective for failing to object to the composition of the jury pool under the Sixth Amendment to the United States Constitution.[6] The Sixth Amendment guarantees defendants a trial by a jury selected from a "fair cross section" of the community. This right is codified in the Jury Service Selection Act of 1968, 28 U.S.C. § 1861. To establish a Sixth Amendment fair cross section claim, a defendant must establish that (1) the excluded group is cognizable; (2) the representation of the group in jury venires is not "fair and reasonable" in relation to the number of such persons in the community; and (3) the underrepresentation is caused by "systematic exclusion" of the group during the jury selection process. Duren v. Missouri, 439 U.S. 357, 364 (1979). To establish the second prong, a defendant must demonstrate "the percentage of the community made up of the group alleged to be underrepresented,

---

[6] Borbon also cites the Supreme Court decisions of Hernandez v. Texas, 347 U.S. 475 (1954) and Hoyt v. Florida, 368 U.S. 57 (1961), *overruled by* Taylor v. Louisiana, 419 U.S. 522 (1975), which addressed challenges to jury pool composition under the Fourteenth Amendment Equal Protection Clause. (Doc. 1790 at 23). However, Borbon focuses his arguments principally on an alleged violation of his Sixth Amendment right to a jury selected from a fair cross section of the community. Hence, the court concludes that Borbon challenges the composition of the jury only under the Sixth Amendment and not under the Fourteenth Amendment Equal Protection Clause.

for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement." Duren, 439 U.S. at 364. Analysis of whether the representation of the group in the jury venire is fair and reasonable in relation to the number of such persons in the community is, "at least in part, a mathematical exercise, and must be supported by statistical evidence." United States v. Weaver, 267 F.3d 231, 240 (3d Cir. 2001). Under the third prong, a defendant may demonstrate systematic exclusion in a jurisdiction's use of voter registration lists "if the use of voter registration lists over time [had] the effect of sizeably underrepresenting a particular class or group on the jury venire." Id. at 244-45.

In support of his fair cross section argument, Borbon provides census information for some of the counties and boroughs within the Middle District.[7] In addition, he requests court-compiled jury panel information from 2006 to 2010. (Doc. 1784). The parties debate Borbon's adherence to the requirements of 28 U.S.C. § 1867 for challenging compliance with jury selection procedures, but because Borbon is raising this issue in the context of a § 2255 motion based on ineffective assistance of counsel, the requirements for requesting discovery found in Rule 6 of the Rules Governing § 2255 Proceedings are more immediately applicable.

---

[7] Borbon only presents census information for the following counties: Adams, Cumberland, Dauphin, Franklin, Lebanon, Perry, and York. Borbon also provided census information for the following boroughs or cities: Palmyra, New Cumberland, Lewistown, Hanover, and Harrisburg. (See Doc. 1790-1, Ex. D). Borbon does not provide census information for the following counties within the Harrisburg Division: Fulton, Huntingdon, Juniata, and Mifflin.

Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." R. GOVERNING § 2255 CASES 6(a).  Additionally, the movant must "provide reasons for the request" and "specify any requested documents." Id.  The movant shows "good cause" if he makes "specific allegations before the court [that] show reason to believe that the petitioner may, if the facts are fully developed," be entitled to relief. Bracy v. Gramley, 520 U.S. 899, 908-909 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).[8]

Borbon has not adequately established that he is entitled to discovery or relief in his favor.  Borbon states that the lack of African-Americans or Hispanics in the jury pool used for his trial indicates that the jury was not selected from a fair cross section of the community.  However, Borbon does not claim that African-Americans or Hispanics were "systematically excluded" from the jury selection process or explain how that "systematic exclusion" took place.  Moreover, regardless of the merits of the underlying fair cross section issue, Borbon only makes conclusory allegations concerning the Strickland factors.  Borbon does not demonstrate, nor even discuss, how trial counsel's representation fell below an objective standard of reasonableness based on the facts before counsel at the time

---

[8] Bracy addressed a motion under R. GOVERNING § 2254 CASES 6(a), but the two rules are substantively identical.  See R. GOVERNING § 2255 CASES 6(a) advisory committee's note.

13

of jury selection. See Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980) ("[t]here must be some evidence of irregularity in jury selection practices before failure to object to the panel rises to the level of ineffective assistance of counsel.") (internal citation omitted). Borbon asserts that trial counsel knew of his concerns because Borbon sought to waive his jury trial rights out of fear that the jurors could have been unduly biased by the illegal immigration status of his co-defendants. (Doc. 1790 at 21). However, this concern is markedly different from whether the jury was selected from a fair cross section of the community, and, regardless, "[r]easonable and effective assistance of counsel does not require an attorney to sift through voluminous jury records every time his client requests that he challenge the array as unconstitutionally drawn." Id.

More importantly, Borbon fails to make any argument concerning how the outcome of his trial would have been any different had trial counsel made a fair cross section challenge. The census information submitted by Borbon shows that, even if the representation of African-Americans and Hispanics in the jury venire was perfectly proportional to the number of such persons in the community, he still likely would have been tried by an all-white jury. (See Doc. 1790-1, Ex. D). Moreover, it defies credulity to believe that a reasonable jury of any racial or ethnic composition would have acquitted Borbon in the face of the overwhelming evidence introduced against him at trial. See Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir. 1998) ("[W]e reject Thomas' claim of prejudice because the evidence, both testimonial and physical, against Thomas was so overwhelming that it is hard to

believe that any reasonable juror, black or white, would have voted to acquit him."); Pugliano v. United States, Crim. A. No. 95-1171, 2005 WL 3478360 (D. Conn. Dec. 19, 2005) ("If the petitioners' fair cross-section claim had been made prior to trial and had been successful, the case would have been transferred to either the New Haven or Bridgeport division for trial. And, based on the overwhelming evidence of the petitioners' guilt, the verdicts would not have been different if the case had been tried in another seat of court in this District."); United States v. Davis, 939 F. Supp. 810, 817 (D. Kan. 1996) (Rejecting defendant's prejudice argument because "[t]he evidence presented at trial against defendant, aside from that which defendant alleges was wrongfully admitted, was overwhelming.").

Specifically, over the course of an approximately two week trial, the government introduced substantial evidence of Borbon's involvement in the distribution of large amounts of illegal narcotics throughout the United States. This evidence came in the form of testimony from cooperating witnesses such as Sanchez and Camacho; extensive testimony from law enforcement; and documentary evidence including telephone records, cell-site records, and hotel records. In light of this substantial evidence, Borbon cannot establish prejudice under Strickland.

The record affirmatively indicates that Borbon's ineffective assistance of counsel claim based on trial counsel's failure to make a fair cross section claim is meritless. Thus, additional discovery and a hearing are not necessary.

D.  Sentence under Alleyne

On July 16, 2013, Borbon filed a motion for leave to add a supplementary ground for relief to his § 2255 motion, which the court granted on July 17, 2013. (Docs. 1813, 1814).  Borbon alleges that his sentence is unconstitutional in light of Alleyne v. United States, 133 S. Ct. 2151 (2013), which held that any fact that increases the statutory minimum sentence for a crime must be decided by a jury beyond a reasonable doubt.  Alleyne is an extension of an earlier Supreme Court case, Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that any fact that increases the statutory maximum sentence for a crime must be decided by a jury beyond a reasonable doubt.  Borbon contends that the increases to his sentencing range pursuant to the United States Sentencing Commission's Guidelines Manual concerned facts that should have been submitted to a jury pursuant to <u>Alleyne</u> and <u>Apprendi</u>.

The government argues that Borbon's motion to supplement his § 2255 motion was improperly granted because it was filed outside the one-year time

limitation for filing motions pursuant to 28 U.S.C. § 2255(f).[9] In relevant part, § 2255(f) provides that the one year limitations period for filing a § 2255 motion shall begin to run on "(1) the date on which the judgment of conviction becomes final; or . . . (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . ."

Borbon filed his supplementary motion on July 16, 2013, which was more than one year after his conviction became final, but within a year after Alleyne was decided.[10] Thus, pursuant to § 2255(f)(3), the court may only consider this claim if it concludes that Alleyne created a newly recognized right that is retroactively

---

[9] The government further asserts that Borbon's supplementary motion should be considered a second or successive petition, which may only be considered under limited circumstances and upon certification by the Third Circuit. See § 2255(h). However, the court had not yet disposed of Borbon's § 2255 motion, and indeed was still awaiting the government's briefing on the matter, at the time Borbon filed his supplementary motion. See Flood v. United States, 867 F. Supp. 2d 539, 552 n.3 (D. Del. 2012) ("In order for a subsequent § 2255 motion to be considered second or successive under 28 U.S.C. §§ 2244 & 2255(h), it must have been filed *after* the first § 2255 motion was adjudicated on the merits." (citing Benchoff v. Colleran, 404 F.3d 812, 817 (3d Cir. 2005))) (emphasis in original); see also Whab v. United States, 408 F.3d 116 (2d Cir. 2005); *In re* Olabode, 325 F.3d 166, 169-173 (3d Cir. 2003). The court should not have granted Borbon's motion to supplement his § 2255 because of the untimeliness of his Alleyne claim, as discussed *infra*, but that does not render his supplementary motion a second or successive petition pursuant to § 2255(h). See United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999) (discussing the propriety of granting motions to amend based on whether the amended claim is timely under § 2255(f) and Federal Rule of Civil Procedure 15(c) and not based on the requirements of § 2255(h)).

[10] Moreover, Borbon's claim for relief pursuant to Alleyne does not relate back to any of the claims asserted in his original, timely § 2255 motion. See, e.g., Flood v. United States, 867 F. Supp. 2d 539, 552-553 (D. Del. 2012).

applicable to cases on collateral review. The Third Circuit found that Alleyne's predecessor, Apprendi, created a new right but it also found that Apprendi was not retroactively applicable on collateral review. See United States v. Swinton, 333 F.3d 481 (3d Cir. 2003). Thus, it is likely that Alleyne is also not retroactively applicable on collateral review. See, e.g., Simpson v. United States, Civ. A. No. 13-2373, 2013 WL 3455876 at *1 (7th Cir. July 10, 2013) (noting, without deciding, that the Supreme Court will probably not declare Alleyne to be retroactive); Lassale-Velazquez v. United States, Civ. A. No. 12-1795, 2013 WL 4459044 at *2 (D.P.R. Aug. 16, 2013) (same); United States v. Reyes, Civ. A. No. 11-6234, 2013 WL 4042508 at *19 (E.D. Pa. Aug. 8, 2013) (finding that Alleyne does not apply retroactively on collateral review); Affolter v. United States, Civ. A. No. 13-1413, 2013 WL 3884176, at *2 (E.D. Mo. July 26, 2013) (same); United States v. Eziolisa, Civ. A. No. 13-236, 2013 WL 3812087 at *3 (S.D. Ohio July 22, 2013) (same); United States v. Stanley, Civ. A. No. 09-0022, 2013 WL 3752126 at *7 (N.D. Okla. July 16, 2013) (same). Therefore, upon further review, Borbon's supplementary motion for relief pursuant to Alleyne was untimely and improvidently granted.

However, even if Borbon's motion for relief under Alleyne was timely filed, it is meritless. The drug quantity that triggered Borbon's statutory maximum sentence of life imprisonment and the mandatory minimum sentence of 10 years' imprisonment was charged in the third superseding indictment and proven to the jury beyond a reasonable doubt. (See Docs. 828, 1214). Other factors increased Borbon's advisory Guidelines range within that statutory range. There is no

18

indication that either <u>Alleyne</u> or <u>Apprendi</u> apply to factual determinations made pursuant to the Guidelines Manual. <u>Alleyne</u> did not abrogate <u>United States v. Booker</u>, 543 U.S. 220 (2005), which held that the Guidelines Manual is advisory and that the court may make factual findings that increase a defendant's Guidelines sentencing range without necessarily violating <u>Apprendi</u>. Thus, the court will deny this claim.

**V.     Conclusion**

For the foregoing reasons, the court will deny Borbon's motion to vacate (Doc. 1790) and his motion (Doc. 1784) for jury panel information. An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       March 3, 2014